For the errors mentioned, the judgment will be reversed, and the cause remanded.

---

CHAPMAN, Commissioner· of Insurance and Banking, et al. v. MOONEY.
(No. 1026.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 14, 1924. Rehearing Denied Jan. 30, 1924.)

1. Banks and banking ⬅️15—Petition to establish claims against guaranty fund held sufficient.

The petition in a suit against the banking commissioner to establish claims based on general deposits secured by the depositors' guaranty fund, *held* sufficient to state a cause of action.

2. Banks and banking ⬅️15—Petition held to show suit against banking commissioner· in official capacity.

Allegations of a petition that a certain bank was declared insolvent and taken over by the banking commissioner and that defendant refused to classify deposits therein as claims payable out of the depositors' guaranty fund, *held* sufficient to show that the suit was against defendant in his official capacity as banking commissioner.

3. Pleading ⬅️403(2)—Petition showing suit against banking commissioner individually cured by admission in answer.

If the petition, in a suit against the banking commissioner, showed on its face that the suit was against him individually, the defect was cured by his admission in his answer that it was a suit against him as head of the department of insurance and banking.

4. Pleading ⬅️403(1)—Answer considered to sustain petition attacked by general demurrer.

Allegations in an answer may be considered in connection with those in the petition to sustain the latter when attacked by general demurrer.

**5. Banks and banking ⟨15—Election to operate under depositors' guaranty fund plan held sufficiently alleged.**

A petition alleging that an insolvent bank was organized under the state banking laws, and that sums deposited therein by petitioners were payable from the depositors' guaranty fund, sufficiently alleged that the bank had elected to operate under the guaranty fund plan, as authorized by Vernon's Sayles' Ann. Civ. St. 1914, art. 445.

**6. Banks and banking ⟨15—Presentation of claims to banking commissioner within time required held sufficiently alleged.**

An allegation of the petition, in a suit against the banking commissioner to establish claims as general deposits secured by the depositors' guaranty fund, "that proof of said claims was made to said department as the law directs," *held* a sufficient allegation that the claims were presented to the commissioner within 90 days after first publication of notice, as required by Rev. St. art. 463, especially as against a general demurrer.

**7. Pleading ⟨228—Every reasonable intendment read into the petition assailed by general demurrer.**

Every reasonable intendment should be read into the petition, when assailed by general demurrer, and any lack of formal averment reached by special exception.

**8. Banks and banking ⟨15—Failure to bring suit on claim rejected by banking commissioner within six months must be pleaded and proved.**

Rev. St. art. 464, requiring that actions on claims rejected by the banking commissioner be brought within six months after service of notice of rejection, does not define a cause of action, but is a statute of limitations, which is a matter of defense to be pleaded and proved by defendant, and plaintiff need not allege compliance therewith.

**9. Banks and banking ⟨15—Timely filing of petition in suit on claim rejected by banking commissioner held shown by petition.**

A petition filed Aug. 23, 1922, and amended Jan. 17, 1923, in an action on claims shown by the record to have been rejected by the banking commissioner between May 27 and Aug. 26, 1922, showed on its face that it was filed within six months after rejection, as required by Rev. St. art. 464, though such fact was not alleged.

**10. Limitation of actions ⟨182(2)—Statute must be pleaded and proved by defendant.**

Statutes of limitations generally operate solely on the remedy and do not destroy the debt, and hence must be pleaded and proved as matter of defense.

**11. Limitation of actions ⟨180(3)—Petition not showing that suit was filed too late not subject to general demurrer.**

Failure of the petition, in an action on claims rejected by the banking commissioner, to allege that suit was filed within six months after rejection, can be reached only by special exception or plea in abatement, and not by general demurrer, where the petition does not show on its face that suit was filed more than six months after rejection.

**12. Banks and banking ⟨15—What sufficient to create deposits secured by guaranty fund.**

Surrendering interest bearing time certificates of deposit for general deposit checking accounts is sufficient to change the deposits into general deposits secured by the depositors' guaranty fund; no actual deposit being necessary.

**13. Banks and banking ⟨15—General deposit checking account held not fraudulent.**

Evidence *held* sufficient to support a finding that depositors' actions in exchanging interest-bearing time certificates for general deposit checking accounts shortly before the bank was taken over by the banking commissioner as insolvent, was not fraudulent, nor in contravention of Rev. St. art. 551.

Appeal from District Court, Tyler County; Hon. J. M. Combs, Judge.

Suit by J. A. Mooney, trustee, against J. L. Chapman, Commissioner of Insurance and Banking, and others. Judgment for plaintiff, and the named defendant appeals. Affirmed.

W. A. Keeling, Atty. Gen., and John W. Goodwin and Walace Hawkins, Asst. Attys. Gen., for appellant.

Mooney & Smith, of Woodville, for appellee.

O'QUINN, J. This is a suit by J. A. Mooney, claiming as assignee the various claims described in his petition, against J. L. Chapman, commissioner of insurance and banking, to establish said claims as general deposits in the Tyler County State Bank, insolvent and in the hands of said commissioner of insurance and banking, secured by and payable out of the depositors' guaranty fund.

Plaintiff alleged that the Tyler County State Bank, prior to March 28, 1921, was doing a banking business under the banking laws of the state of Texas, and that on said date it was declared insolvent and taken in charge by said commissioner of insurance and banking; that the persons assigning their claims to plaintiff had, on the day said bank was closed, on deposit, subject to their check, the various sums of money named in plaintiff's petition; that each of said persons made proof of their said claims as the law directed; that each of said claims were subject to be paid out of the guaranty fund; that defendant refused to classify said claims as payable out of said fund; that each of said claims had been transferred to plaintiff by the original owners thereof, and prayed for judgment classifying said claims as noninterest-bearing checking accounts,

payable out of the guaranty fund, and for general and equitable relief.

The defendant Chapman answered by general demurrer, general denial, and specially: (1) That the assignors to plaintiff originally held interest-bearing time certificates of deposit issued to them by the Tyler County State Bank for the amounts stated in the petition; that said certificates were issued prior to March, 1921, and matured at various dates subsequent thereto, and were interest bearing; that before the maturity of said certificates, or any of them, and just prior to the closing of said bank, the holders of said certificates surrendered said certificates to the Tyler County State Bank, in consideration of which surrender the bank agreed to give each of said depositors credit on its books as a general depositor for an amount equal to their respective certificates; that at the time said contract was made surrendering said interest-bearing time certificates of deposits, as aforesaid, the Tyler County State Bank was insolvent, and therefore said transaction was a fraud upon the guaranty fund and void.

(2) That the parties named in plaintiff's petition were depositors in the Tyler County State Bank and held interest-bearing time certificates of deposit for the amounts respectively set forth in plaintiff's petition; that just prior to the closing of the Tyler County State Bank and long before the maturity of said certificates of deposit, the holders thereof surrendered same to the Tyler County State Bank, in consideration of which it gave each of them credit as general depositors for the amount of their respective claims; that, at the time of the surrender of said certificates of deposit, the Tyler County State Bank was insolvent, and therefore the transaction converting the interest-bearing time certificates of deposit into general deposits was in violation of article 551 of the Revised Statutes, which prohibits an insolvent bank from securing creditors, preferring creditors, or in any manner altering or changing its relation to its creditors, and from doing any act with a view to prevent the application of its assets in the manner prescribed by law, and is therefore void.

The case was tried before the court without a jury, and judgment rendered for plaintiff establishing the claims sued on as general deposits secured by the guaranty fund, from which judgment the defendant Chapman appealed.

[1] Appellant's first assignment of error is:

"The court erred in overruling the general demurrer of the defendant J. L. Chapman to plaintiff's first amended original petition."

The assignment is overruled. The petition states a cause of action.

[2-4] The second assignment says the court erred in overruling the general demurrer of defendant Chapman to plaintiff's first amended original petition, because said petition shows on its face that this is an action against said Chapman as an individual and not as commissioner of insurance and banking. The assignment is overruled. We think the allegations in the petition are sufficient to show that the suit is against Chapman in his official capacity. If the petition had been subject on its face to the objection stated, defendant fully cured same by admitting in his answer that this is a suit against him as the head of the department of insurance and banking of the state of Texas. That the allegations in an answer may be considered in connection with those in the petition in order to sustain the latter when attacked by a general demurrer is well settled. Peoples v. Brockman (Tex. Civ. App.) 153 S. W. 907 (writ denied); Hotel Dieu v. Armendariz (Tex. Civ. App.) 167 S. W. 181; Hranicky v. Sell (Tex. Civ. App.) 199 S. W. 315.

[5] By his third assignment, appellant complains that the court erred in overruling his general demurrer to plaintiff's first amended original petition, because it was not alleged in said petition that the Tyler County State Bank had elected to operate under the depositors' guaranty fund plan, or that it was operating under said plan. This assignment is overruled. Banks organized under the banking laws of Texas are required to elect to do business in one of two ways—by availing itself of the protection to depositors by the guaranty fund system, or by adopting the depositors' bond security system. Article 445, Vernon's Sayles' Civil Statutes. In order for the claims to be paid out of the guaranty fund, the bank must have been doing business under the guaranty fund plan. Plaintiff alleged that said bank was organized under the state banking laws, and that on the date the bank was closed the persons named in the petition had on deposit in said bank the sums of money therein set out, and that each and all of said claims were subject to be paid out of the guaranty fund of the banking department of the state of Texas.

[6, 7] The fourth assignment of error is to the effect that the court erred in overruling appellant's general demurrer to plaintiff's first amended original petition, because said petition fails to allege that the claims therein set forth were presented to the commissioner of insurance and banking within 90 days after the first publication of notice, as required by article 463, Revised Statutes. The assignment is overruled. The petition alleged:

"That proof of said claims was made to the said department as the law directs."

Proof made under what law and to what department? Construing all the allegations in said petition together, we think the mean-

ing very apparent—proof made under article 463, supra, and to the commissioner of insurance and banking, and as said law directs, within 90 days after the first publication of the notice therein required. We think the allegation sufficient, especially as against a general demurrer. Under this allegation proof was permissible and was made that each of the claimants presented his claim and made proof thereof to the commissioner of insurance and banking within the 90-day period. When assailed by a general demurrer, every reasonable intendment should be read into the petition. If there was lack of formal averment, this must be reached by special exception.

[8] By his fifth assignment of error, appellant asserts that the court erred in overruling his general demurrer to plaintiff's first amended original petition, because said petition does not allege any facts showing that the suit was brought within six months after the rejection of the claims sued on, by the commissioner of insurance and banking. This assignment is overruled. While article 464, Revised Statutes, provides that action upon claims rejected by the commissioner of insurance and banking must be brought within six months after service of notice of rejection of the claim, we think that the provision is not one defining what, in the premises, should constitute a cause of action, but that it is a statute of limitation—a matter of defense to be pleaded and proved by the defendant, and therefore it was not necessary for appellee to allege that suit was filed within six months after the rejection of the claims.

[9] Moreover, in view of the record, the petition shows upon its face that it was filed within less than six months after the rejection of the claims. The record shows that the claims were rejected anywhere from May 27, 1922, to August 26, 1922, and the original petition was filed August 23, 1922, and the first amended original petition, on which the case was tried, was filed January 17, 1923. While appellant alleged in his answer that said suit was filed more than six months after the rejection of the claims, he seems to have abandoned the plea, as no effort was made to prove that the suit was not filed within proper time.

[10] It is an elementary principle that the statute of limitations as a general rule pertains to the remedy and not to the right. 19 A. & E. Ency. of Law (2d Ed.) 146. In other words, statutes of limitation worded like ours are generally held to operate solely upon the remedy in the courts and not to destroy the debt. Fievel v. Zuber, 67 Tex. 279, 3 S. W. 273. Therefore it must be pleaded and proved as matter of defense by the defendant. 17 R. C. L. p. 984, § 363; Sharrow v. Inland Lines, 214 N. Y. 101, 108 N. E. 217, L. R. A. 1915E, 1192 and note, Ann.

Cas. 1916D, 1236; Green v. McCord, 204 Ala. 364, 85 South. 752.

[11] In any event, it is not believed that the defect, if such it was, in not alleging that the suit was filed within six months after the rejection of the claims, could be reached by a general demurrer. The petition did not show on its face that the suit was filed more than six months after the claims were rejected, there not being any allegation as to when the claims were rejected, so the defect, if one existed, would have to be reached by a special exception or plea in abatement. Sievert v. Underwood, 58 Tex. Civ. App. 421, 124 S. W. 721; Rucker v. Dailey, 66 Tex. 287, 1 S. W. 316.

Appellant's sixth and seventh assignments are overruled. We think the evidence amply supports the finding and judgment of the court.

Appellant's eighth, ninth, and tenth assignments of error present the controlling question in the case, that the court erred in rendering judgment establishing plaintiff's claims as general deposits secured by and payable out of the depositors' guaranty fund, for the reason that the evidence showed that at the time the original claimants of the demands described in plaintiff's petition surrendered their interest-bearing time certificates of deposit in the Tyler County State Bank and accepted in lieu thereof noninterest-bearing demand certificates of deposits, the Tyler County State Bank was insolvent, and, therefore, said transaction was illegal and void, being in contravention of article 551, Revised Statutes.

J. S. Wightman testified that he was a special bank examiner in 1920 and 1921; that he examined the Tyler County State Bank on November 15, 1920, and on February 5, 1921, and on March 21, 1921; that the bank on February 5, 1921, was almost absolutely insolvent; that on said date it was practically in the same condition it was on November 15th; that at that time there was $97,085.87 of actual losses in loans which had been charged out, and that the capital stock was impaired over 100 per cent., including these losses; that the bank was capitalized for $60,000, and they had $40,000 over 100 per cent.; that the capital stock had been wiped out by losses sustained, and they had $40,000 over and above; that when he examined the bank in March, 1921, he found $300,000 of doubtful paper, including that which he had found before, and that at that time he regarded the capital stock as fully impaired, and that was the bank's condition when it was closed on March 28, 1921; that when the bank was closed it had $1,064.54 in cash, and $6,000 in cash items; that the cash items consisted of drafts and checks drawn on other banks, which were returned unpaid, and were worthless; that the bank was open and doing business up to

the time it was closed, March 28, 1921. He further testified that only the commissioner of insurance and banking had the right to declare the bank insolvent and take charge of it, and that he (Wightman) did so' when it (the insolvency of the bank) became apparent to the department; that it would not be presumed the bank was closed when it was determined that it was in an insolvent condition—not at once, because you have got to give the stockholders and directors a chance to make good. They thought they could make good and collect this amount, and if they could pay in this amount of money to make up the loss, then the commissioner would have no authority to close the bank, and in this instance they did—

"The directors paid in to me $165,000 in cash to hold the bank open, but the amount was insufficient to hold the doors open—the losses exceeded that amount. The losses exceeded that amount by $175,000. After they paid in $165,000 I demanded they give me $175,000 more. This demand was in the second examination, February 5th. They couldn't get it, and in March we closed the bank. I gave them 30 days to get the money. They were sure and the commissioner was sure they could get this money, this $165,000 ($175,000), and they made a pretty good effort to get it."

It was agreed that the bank was open for business at 10 o'clock, March 28, 1921, the day it was closed, and on said morning deposits from its customers were accepted in the usual course of business.

The testimony of each and all the claimants whose claims formed the basis of this suit is to the effect that when they originally deposited their money in the Tyler County State Bank it was on an interest-bearing basis and for a fixed period of time. Each also testified that they surrendered their certificates before the maturity thereof, and but a short time before the bank was closed, and that in consideration of the surrender of these certificates they were to have and did get credit upon the books of the bank as general depositors for like amounts. But it is contended by appellee that the parties, in surrendering their interest-bearing time certificates and receiving credit for the amount of their claims as general depositors, they did not do so for the purpose of defrauding the guaranty fund, nor because of any knowledge that the bank was insolvent, but that they and each of them needed their money for present use, and for that reason only changed their deposits.

The claimants, without exception, testified that at the time they changed their certificates they did not believe the bank to be insolvent. Many of them testified that they had never heard that the bank was in bad condition financially, and each of them testified that he did not know the difference between a time certificate and a checking account, in so far as the guaranty fund was concerned, that they thought one was as good as the other. They testified to the purposes and reasons why they changed their deposits, and none showed a change because they feared losing their money, but in the main, because they had present need of the money. There is no proof that any of the depositors had knowledge that the bank was likely to close its doors in the near future, or as to that at any time, but, to the contrary, it appears without dispute that the banking department for some months before the bank was closed had full knowledge of its precarious financial condition, and was calling upon the directors to make good, and they were doing their best to do so, and at the very time the bank was closed, and at the very time the certificates of deposit were changed, the bank was open and doing business in a regular way by the permission of the banking department, with full knowledge on its part that the bank was and for some time had been insolvent, and that it might be necessary at any day to close same. This knowledge was not in the possession of the public, but these depositors having confidence in the bank and being without knowledge that it was about to fail, continued to do business in the regular way and to leave their money in the bank, after they had changed their deposits to a checking account, not even trying to get the money, but leaving it in the bank to be checked out as needed. The bank examiners had visited and inspected the bank at regular intervals before the closing of its doors, and the very fact that this had been done and no information reached the depositors that anything was wrong, it seems to us was sufficient to cause them to rest easy and proceed to deal with the bank as usual.

[12] Appellant insists, in effect, that the mere changing of the deposit by surrendering one deposit slip and receiving another in its place does not amount to a deposit and would not create the relation of surety on the part of the guaranty fund; that in order to bring about such relation an actual deposit of money must have been made. We cannot agree to this contention. The money was in the bank and the transaction of changing the deposit· was as though the cashier had actually paid over the money to the several depositors and they had immediately redeposited it in the bank. 3 R. C. L. § 123, p. 496; Cunningham v. State, 115 Ark. 392, 171 S. W. 887.

[13] Appellant further insists that the transaction of the depositors changing their deposits from interest-bearing time certificates to general deposit checking accounts was illegal, fraudulent, and void, and cites us to the case of Hill v. Kavanaugh, 118 Ark. 134, 176 S. W. 336, 4 A. L. R. 1, and Commercial Union Assurance Co. v. Winstead (Tex. Civ. App.) 213 S. W. 955. We do not think

that either of the cases, under the facts there passed upon and the facts involved here, are in point. Besides, the court in the instant case heard all the evidence and found against appellant's contention, and we think the record amply supports his finding.

But appellant says that the changing of said certificates of deposit under all the facts of the case was a transaction in contravention of article 551 of the Revised Statutes, and therefore illegal and void. We do not think a proper interpretation of said law will bear out appellant's contention. Said article provides:

(1) That a bank shall not make a voluntary assignment of its business affairs. This was not done by the bank.

(2) That a bank shall, upon finding itself in a failing condition, place itself in the hands of the commissioner of insurance and banking. This bank had, in effect, been in the hands of the commissioner for some time, and, in fact, was from February 5, 1921, to the date of its closing, March 28, 1921, operating under the special permit of "30 days" of the banking department to get up money to meet its financial straits, with the assurance that if it did not do so, it would be closed.

(3) That any deed or voluntary assignment executed by a bank shall be null and void. The bank had not executed, nor had it attempted to execute any such assignment.

(4) "All transfers of the notes, bonds, bills of exchange or other evidence of debt, owing to any bank or trust company organized under this title, or of deposits to its credit, all assignments of mortgages, securities on real estate, or of judgment or decrees in its favor, all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to it made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this title, or with a view to the preference of one creditor to another, shall be utterly null and void."

The deposits here in question were not evidence of any debt owed to the bank, or evidence of deposits to its (the bank's) credit, but, to the contrary, were evidence of debts owed by it to the depositors; neither were the deposit certificates an assignment of any mortgage, security, judgment, or decree in the bank's favor; nor were they deposits of money, by the bank for *its* use or for the use of any of *its* shareholders or creditors; nor were they payments of money *to the bank* after the commission of some act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by law, or with a view to the preference of one creditor to another. We do not think that the act of changing the certificates of deposit, under the circumstances in evidence, show either fraud or that it was in contravention of any

of the provisions of article 551, as claimed by appellant.

The judgment should be affirmed, and it is so ordered.

Affirmed.

───────────

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 12, 1924.