**CHAPMAN, Com'r of Insurance and Banking, et al. v. TYLER COUNTY.***

(No. 1016.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 11, 1924. Rehearing Denied Feb. 28, 1924.)

**1. Counties ⬅217—Action to establish claim against insolvent bank held properly brought in county's name.**

An action against the commissioner of insurance and banking to establish a claim in favor of the county growing out of certificates of deposit assigned to it *held* properly brought by the county under Rev. St. art. 1835, rather than by the treasurer individually.

**2. Banks and banking ⬅15—Bringing of action within six months after rejection of claim need not be alleged.**

A petition in an action against the commissioner of insurance and banking to establish a claim secured by the depositors' guaranty fund *held* not subject to a general demurrer because of failure to allege that the suit was commenced within six months after rejection of the claim as required by Rev. St. art. 464.

**3. Banks and banking ⬅15—Statute limiting time for action on claim must be affirmatively pleaded.**

Rev. St. art. 464, requiring actions on claims under the bank deposit guaranty law to be brought within six months after rejection thereof, being a statute of limitation, must be affirmatively pleaded in order to constitute a defense.

**4. Banks and banking ⬅15—Assignee of noninterest-bearing certificates of deposit held not "depositor."**

A county which in payment of bonds has had assigned to it noninterest-bearing certificates of deposit is not a "depositor" as defined by Rev. St. art. 486, protected by the depositors' guaranty fund.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depositor.]

**5. Banks and banking ⬅15—Deposit of county held not noninterest-bearing.**

Where a county in payment of bonds sold received a cash payment and had assigned to it noninterest-bearing certificates of time deposit of a bank equivalent to the cash value of the bonds, and in addition a substantial cash premium, *held* that, if the assignment to it of such certificates of deposit constituted it a depositor within the meaning of Rev. St. art.

486, it was nevertheless not entitled to the protection of the depositors' guaranty fund as an unsecured and noninterest-bearing deposit; the premium received by it in excess of the value of the bonds being in effect interest thereon.

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Action by Tyler County against J. L. Chapman, Commissioner of Insurance and Banking, and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

W. A. Keeling, Atty. Gen., for appellants. Sonfield, Nael & King, of Beaumont, for appellee.

WALKER, J. We take the following statement of this case from appellee's brief:

"In the month of April, 1919, Tyler county voted the issuance of special road bonds in the sum of $800,000. The bonds were duly issued and approved by the Attorney General, the same being dated the 1st day of July, 1919, and bearing interest at the rate of 5 per cent. per annum.

"The bonds were duly advertised for sale by the commissioners' court, and the bid of J. P. Parris & Co. accepted, the purchasers agreeing to pay therefor the par value of the bonds, together with accrued interest and a premium of $19,000; the accrued interest, premium, and 1/36 of the par value of the bonds to be paid in cash upon delivery of the bonds to the purchasers in Chicago, Ill. The balance to be evidenced by noninterest-bearing certificates of deposit issued by some bank satisfactory to the commissioners' court, the same to be dated as of the date of delivery of the bonds and to be due and payable in thirty-six monthly installments of approximately equal amounts.

"Thereafter, certain citizens and taxpayers filed suit in the district court of Tyler county, seeking to enjoin the commissioners' court from carrying out the contract of sale with J. P. Parris & Co. on the ground that the sale was partly on credit, the statute requiring a sale for cash, and an injunction issued as prayed for. Subsequently, on the 3d day of September, 1919, and while the injunction was in force, Gurley & Gurley submitted a bid or proposal for the purchase of the bonds at the same price and upon the same terms as offered by J. P. Parris & Co., except that the premium to be paid was $19,855, instead of $19,000, as under the bid of J. P. Parris & Co.

"This bid was, on the same day, accepted. The Tyler County State Bank was agreed upon as the certificate-issuing bank.

"In this matter Gurley & Gurley were acting for J. P. Parris & Co., and J. P. Parris & Co. were the real purchasers of the bonds. Hereinafter, throughout the brief and argument, we will deal with Gurley & Gurley, meaning thereby the bond purchasers.

"Prior to the submission of the bid of Gurley & Gurley for the purchase of the bonds, they entered into an agreement with the bank, through its cashier, to the effect that, if the bid was accepted and the bank selected as the certificate-issuing bank, and the proceeds of the bonds over and above the cash payment be deposited in the bank as a noninterest-bearing time deposit, evidenced and payable in the manner provided in the bid, the bank would pay to Gurley & Gurley in consideration of their procuring for the bank the deposit, a part of the purchase price, the difference between the amount received upon a resale of the bonds and the contract price to be paid the county. The county was not a party to and had no knowledge of this agreement, and had no knowledge of any payment made or to be made by the bank to or in behalf of Gurley & Gurley, prior to or at the time of the acceptance of their bid and the sale and delivery of the bonds.

"Upon the acceptance of the bid of Gurley & Gurley, the sale of the bonds to them, and the selection of the Tyler County State Bank, hereinafter referred to as the bank, as the certificate-issuing bank, E. A. Dismuke, the then cashier of the bank, was appointed by the county judge to deliver the bonds to the purchasers in Chicago and upon delivery to procure the money for the cash payment and the time deposit certificates.

"Prior to and at the time of the sale of the bonds the bank was the duly selected county depository, having qualified as such by executing a general depository bond in the sum of $80,000, and on the 9th day of August, 1920, nearly one year after the sale of the bonds and the making of the deposit, the bank executed a second general depository bond in the sum of $500,000.

"Dismuke delivered the bonds to the purchasers in Chicago on September 9, 1919, they paying to Dismuke upon such delivery the sum of $779,000, the bank paying the sum of $47,272.22, the two sums aggregating the contract price of the bonds. Of the amount so paid, the agreed cash payment of $50,272.22 was deposited in the bank as county depository, and the amount of said deposit was by the bank credited to the account of the county treasurer in the county depository in the manner in which all deposits of county funds in the bank as depository were credited. The balance of the contract price, $776,000, was actually deposited by Dismuke in the bank and by the bank credited to its time deposit certificate account, the bank contemporaneously issuing in the name of Gurley & Gurley 36 noninterest-bearing time deposit certificates, payable one each month, aggregating $776,000, the certificates being dated as of the date of the contract of sale instead of the date of the delivery of the bonds. These certificates were immediately, upon their issuance indorsed by Gurley & Gurley as agreed between the parties for the sole purpose of transfer to the county, it being agreed herein that Gurley & Gurley had no beneficiary or other interest in the certificates. The following is a copy of one of the certificates, all bearing the same date and being in approximately the same amount, one becoming due and payable each month:

" 'Tyler County State Bank. 88–1539. No. 931.
" 'Guaranty Fund Bank.

" 'Woodville, Texas, Sept. 3, 1919.
" '$21,555.56.

" 'Gurley & Gurley has deposited in this bank twenty-one thousand five hundred fifty-five and 56/100 dollars payable to the order of themselves nineteen months after date on return of this certificate properly indorsed.
" 'E. A. Dismuke, Cashier.'

"The bank actually received $776,000 of the money collected by Dismuke as a time deposit, and upon this deposit so actually made and received no interest was paid or contracted to be paid directly or indirectly to Gurley & Gurley, the county, or to any one else.

"Tyler county has never demanded or received any interest on the deposit of $776,000 so actually made in the bank or any part thereof. Payment in full of this deposit, together with the cash payment made to the county, will aggregate the contract price for which the bonds were sold, and would constitute all the money paid to or received or contracted to be paid to and received by the county for the bonds.

"The $776,000, deposited by Dismuke was never in the custody or possession of the county treasurer. It was never charged against the bank as county depository on the books of the county treasurer, and the deposit and no part of same was credited on the books of the bank as county depository to the county treasurer, or in any manner credited on such books to Tyler county. The certificates of deposit were never deposited in the bank, but were retained in possession of the county treasurer, and were not charged on his books to the depository account of the county or treated as cash on his books or in his reports to the commissioners' court, and no part of the money represented by the certificates was placed in the depository account by the treasurer or any one else, either in the bank or on the treasurer's books, except that the proceeds of each certificate collected as it matured was by the treasurer placed in the depository account in the bank to his credit as county treasurer in the manner in which all deposits of county funds were credited and accounted for by him in his reports to the commissioners' court. Upon such proceeds so deposited the bank paid interest to the county as upon the deposit of all county funds.

"The bank, because of its insolvency, was closed and taken in charge by the department of insurance and banking on the 28th day of March, 1921. At the date of the closing of the bank eighteen of the certificates of deposit had been paid and the proceeds deposited in the bank as county depository, leaving 18 unpaid, aggregating the sum of $388,000.

"The county, within the time provided by statute, duly proved up its claim for this amount of $388,000, and presented same to the commissioner of insurance and banking for payment out of the depositors' guaranty fund as an unsecured and noninterest-bearing deposit. The claim as payable out of the guaranty fund was rejected by the commissioner, and this suit was filed within six months after such rejection, seeking the establishment and classification of the claim as payable out of the depositors' guaranty fund."

On a trial to the court without a jury, judgment was entered in favor of Tyler county for the amount of its claim, interest, etc.

[1] Appellant's first proposition is that the county was without authority to prosecute this suit. They say:

"County funds, when deposited in a bank other than a county depository are placed there at the risk of the county treasurer and any action concerning the same would be in him."

There is no allegation that the funds in controversy were ever in the possession of the treasurer of Tyler county, but, in fact, it appears from the allegations of the petition and from the facts that the funds were never in the treasurer's possession. Under the facts of this case, there was no liability against the treasurer in favor of the county for the loss of its funds. This suit was properly brought by the county by and in the name of Tyler county. Article 1835, Revised Civil Statutes, provides:

"All suits brought by or against any of the counties or incorporated cities, towns or villages shall be by or against it in its corporate name."

See McConnell v. Wall, 67 Tex. 323, 3 S. W. 287; Smith v. Mosley, 74 Tex. 631, 12 S. W. 748.

[2] Appellants' second proposition is as follows:

"A petition to establish a claim as a general deposit, secured by the depositors' guaranty fund, which fails to allege facts from which it will be made to appear that the suit was filed within six months after rejection of the claim by the commissioner of insurance and banking, is defective and subject to general demurrer."

Article 464, Revised Civil Statutes, provides:

"The action upon the claim so rejected must be brought within six months after such service."

[3] This is a statute of limitation and must be pleaded affirmatively in order to constitute a defense. 17 R. C. L. 984; Green v. McCord, 204 Ala. 364, 85 South. 752; Stanley v. Green, 205 Ala. 225, 87 South. 356; Sharrow v. Inland Lines, 214 N. Y. 101, 108 N. E. 217, L. R. A. 1915E, 1192, and note, Ann. Cas. 1916D, 1236; Chapman v. Mooney, 257 S. W. 1106, an opinion by this court.

We believe the court's judgment in favor of appellee is wrong for two reasons:

[4] (1) The transfer to appellee of the time deposit certificates under the facts involved by appellee's statement, as given by us above, did not constitute it a "depositor" protected by the "depositors' guaranty fund" within the meaning of our banking laws. This court, in a series of opinions (Tyler County State Bank et al. v. Seaboard State Bank & Trust Co., 257 S. W. 951; Tyler County State Bank et al. v. Nannie Johnson, 257 S. W. 932; Tyler County State Bank et al. v. J. W. Rhodes, 256 S. W. 947; none of which have been officially published), growing out of the failure of the Tyler County State Bank, has had before it this question, and in our definition of a depositor protected under article 486, Revised Civil Statutes, we have quoted with approval the following definition announced by the Supreme Court of Oklahoma in Lankford v. Schroeder, 47 Okl. 286, 147 Pac. 1052, L. R. A. 1915F, 626:

"That the plaintiff was not a depositor entitled to payment of his claim out of assets in the hands of the bank commissioner or out of the state guaranty fund, we think is clear. A depositor who is protected from loss by a failing bank is one who takes his money or its equivalent and places it, or causes it to be placed, in the bank to his credit subject to his right to check it out or withdraw it from the bank at will."

The case just cited has been expressly approved by our Supreme Court in Kidder v. Hall, 251 S. W. 499, wherein Mr. Chief Justice Cureton gives the following definition of a depositor:

"A depositor is one who delivers to or leaves with a bank money, or checks or drafts, the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank."

Appellee left nothing with the Tyler County State Bank, but took in part payment of its bonds a series of certificates denominated by the parties as "certificates of deposit." From the very nature of the contract under which it was agreed that these certificates of deposit were to be issued to Gurley & Gurley and by them transferred to appellee, the intention of the parties as evidenced by that contract negatives the idea that appellee was to be a "depositor" as that term has been defined. This contract was nothing more than a sale, part for cash and part on time, the time deposit slips being in effect nothing more than noninterest-bearing promissory notes. Appellee could not check against these deposit certificates. It could not convert them into a checking account without the consent of the Tyler County State Bank. Manifestly, even if it had the power to convert the certificates into a present checking account, it could not have done so except on a discount, because the bank would not have redeemed a long-time interest-bearing deposit certificate by paying in cash its full face value long before its maturity. The relation between the Tyler County State Bank and appellee was that of ordinary debtor and creditor, and under our conclusion not that of "banker" and "depositor."

[5] (2) But if we are in error in our construction of the facts, and if, in fact, these time deposit slips did constitute a "deposit" within the meaning of our banking laws (article 486, Revised Civil Statutes), then we say that appellee, under its contract, was to receive interest on the sale price of its bonds, which was added to and became a part of the sale price of the bonds. True, there is no

testimony—that is, no one said directly—that the county was to receive interest. But under the terms of this contract the bond buyers were to pay a sum largely in excess of the cash value of the bonds as reflected by the statement given above. Because of the indulgence allowed Gurley & Gurley in paying for these bonds, over a series of many months, they agreed to a contract price in excess of what the bonds were sold for in cash. That was the price agreed upon. It appears, of course, from the terms of this sale contract that the county received more for its bonds by reason of the long indulgence given to Gurley & Gurley than it would have received in cash. Manifestly, the county received for its indulgence to Gurley & Gurley the difference between the cash value of the bonds and the contract price. We conclude that this transaction constituted a direct contract to pay interest to the county for the use of its funds; if not a direct payment of interest, then a payment of interest indirectly, which had the effect of depriving the county of the protection of the "depositors' guaranty fund." Cureton's Banking Laws of Texas, 679.

Under our conclusions, it necessarily follows that the judgment of the trial court in favor of appellee must be reversed, and judgment here rendered in favor of appellant; and it is accordingly so ordered.

Reversed and rendered.