L. A. ANDREW, State Superintendent of Banking, Appellee, v. BEVINGTON SAVINGS BANK, Appellee; MARTIN J. ROACH et al., Appellants.

OCTOBER 23, 1928.

*Stipp, Perry, Bannister & Starzinger*, for appellants.

*Leo C. Percival*, for Receiver, appellee.

KINDIG, J.—The Bevington Savings Bank was a banking corporation, organized under the laws of Iowa, and located at Bevington. Financial embarrassment overtook the institution, and the state banking department ordered an assessment on the stock of the concern, to restore impaired capital, on or about

December 31, 1921. Such action was taken under and by virtue of Section 1878 of the 1897 Code, which reads:

"Should the capital stock of any state or savings bank become impaired by losses or otherwise, the auditor of state [afterwards by amendment made the superintendent of banking] may require an assessment upon the stockholders, and shall address an order to the several members of the board of directors of such bank, fixing the amount of assessment required, and the board of directors shall, within thirty days after the receipt of such order, cause such deficiency to be made good by a ratable assessment upon the stockholders for the amount of stock held by them, by giving such stockholders notice in writing, signed by the president or vice president, attested by the cashier or secretary of the bank, under its seal, if it have one, and deposited in the post office, addressed to the last known residence of the stockholders, proof thereof to be made by the affidavit of the person so making the deposit; which notice shall state the entire sum to be raised, and the amount due from the addressed stockholder."

Appellants, Martin J. Roach, Chris Wolfe, and Emma Schropel, were stockholders, and paid their portion of this assessment.

Thereafter, the bank continued to operate and function as such until the appointment of a receiver, on March 29, 1922. Thomas Enright was named as such trust officer for the corporation, and he duly qualified, and has acted in that capacity ever since. Receiver's certificates were issued as part of the administrative policy advised and suggested by the state superintendent of banking, the state attorney-general, and a judge of the district court, who appointed the receiver.

In all, $17,500 was procured by the receiver through the inauguration of this system, and all used to pay the depositors and other creditors of the bank. So the present proceedings were instituted for the purpose of collecting from the stockholders, including appellants, a sufficient sum by a second assessment to pay the indebtedness evidenced by these certificates. This additional assessment is under a different statute from that authorizing the first. Reference is made to Section 1882 of the 1897 Code, which provides:

"All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders; and should any such association or corporation become insolvent, its stockholders may be severally compelled to pay such deficiency in proportion to the amount of stock owned by each, not to exceed the extent of the additional liability hereby created. The assignee or receiver of any such corporation, or in case there is none, or of his failure or refusal to act, any creditor thereof, may maintain an action in equity to determine the liability of the stockholders, and the amount to which each creditor shall be entitled; and all parties interested shall be brought into court."

Three general reasons are assigned by appellants as to why this remedy sought by the receiver is not available. They will be considered in the order named in appellants' argument.

Before proceeding therewith, however, it is essential to know that the appellants Chris Wolfe and Emma Schropel, after serving their notices of appeal, paid the judgment against them for the assessment in question, and no longer are litigants herein. Consequently, the only appellant now important in this proceeding is Martin J. Roach; and hereafter, when reference is made to the appellant, the intention will be to indicate the said Roach.

I. It is urged by appellant that Thomas Enright, who was originally appointed receiver, is no longer such, because the  fortieth general assembly changed the law under which he was named, by enacting Chapter 189 of the Session Laws, which is now Section 9242 of the 1927 Code, and reads thus:

"The superintendent of banking henceforth shall be the sole and only receiver or liquidating officer for state incorporated banks and trust companies * * * ."

That is to say, appellant's idea is that, in view of the new legislation, the superintendent of banking automatically became the receiver of the Bevington Savings Bank, and Thomas Enright, who was previously legally and duly appointed as such,

was thereby ousted, without the necessity of a resignation or a court proceeding.

With this logic we are persuaded to disagree. "Henceforth," as used in the legislative enactment, has its significance. Manifestly, it was the intent of the lawmakers that, in the future, when the district court appointed a receiver for an insolvent banking institution, "the superintendent of banking" should be named, rather than any other person. Even without the word "henceforth," that would be the effect of such change in the law. *Foster & Son v. Bellows*, 204 Iowa 1052; *In re Estate of Culbertson*, 204 Iowa 473. We suggested in *Foster & Son v. Bellows*, supra:

"Established principles of construction compel us to say that acts of the law-making body, unless otherwise plainly expressed, are aimed for the government of the future, rather than the past."

When the act of the fortieth general assembly was adopted, Thomas Enright had already been appointed, and was acting as receiver for this bank, under a law authorizing the same. If the legislature had intended to interrupt this officer of the court in the execution of his trust, it would have provided for his removal and the substitution of the superintendent of banking. No such operating machinery was furnished.

Moreover, application for a change of liquidating officers has not been made in the district court having jurisdiction of the subject-matter. But, on the other hand, appellant, during all the years, has stood by and permitted the originally appointed receiver to continue his activities in that capacity. Hence, under all the considerations just discussed, it is plain that Thomas Enright is the receiver duly qualified to act in the premises.

II. Complaint is made because the district court allowed the second assessment under a record not justifying the same. More definitely, appellant's objection is that the bank transacted no business during the interim between the first assessment and the court's designation of the receiver. Thus the proceeds of the first assessment, he says, were for mere liquidating purposes.

Only one object can authorize that assessment, and this is

874

to strengthen the impaired capital, as contemplated under Section 1878 of the 1897 Code. However, substantiation exists in the record for the conclusion that, when the assessment was made, there was no thought of winding up the bank's affairs; but, on the contrary, the idea undoubtedly was to restore the impaired capital so and in order that the institution could continue as a going concern. Business was transacted during the period mentioned. Clearly, then, the first assessment was not authorized or made for mere liquidation purposes. *Leach v. Arthur Sav. Bank*, 203 Iowa 1052; *Andrew v. Farmers Tr. & Sav. Bank*, 204 Iowa 243.

III. By the establishment of this fact, the way is paved to reach the conclusion that the second assessment, contemplated in Section 1882 of the 1897 Code, was permissible, even though there had been a previous assessment under Section 1878 thereof. One is to restore the bank's capital, and the other is for the benefit of certain creditors. An apt discussion of this subject appears in *Leach v. Arthur Sav. Bank*, supra, as follows:

"It will be noticed that, under these sections [1878 and 1879 of 1897 Code] for making an assessment to rehabilitate impaired capital, there is no personal liability created as against the stockholder (under Chapter 181, Acts of the Forty-first General Assembly, a personal liability is created for a deficiency) ; while, under Section 1882, the liability provided is a personal liability. * * * This is the distinction between the effect of Section 1878 and its companion sections, providing for assessments against the stock, and the superadded liability provided for by Section 1882. * * * The assessment made under Section 1878 is purely for the benefit of the bank itself and its stockholders, while the liability created under Section 1882 is wholly for the benefit of the creditors of the banking corporation. The latter liability constitutes a fund available only when the bank is insolvent, and unable to meet its obligations in full. The corporation itself can derive no benefit from the fund, and, as a corporation, cannot compel its payment, or any part of it."

Again, the same thought is expressed in *Andrew v. Farmers Tr. & Sav. Bank*, supra, by the use of the following language:

·"The statutory liability [under Section 1882, supra] * * * of stockholders in banking corporations, as they now exist, is designed for the benefit of creditors, and has for its object the creation of a fund available only when the bank is insolvent, and unable to meet its obligations in full. See 3 Ruling Case Law 398, Section 27. The fund is for the payment of all the corporate debts of the bank after its assets are exhausted. If it is insufficient to pay all the debts, it must be distributed among the creditors according to the established principles of equity. * * * The stockholders' liability is to creditors, and not to the corporation. It is plain that, under Sections 9246 to 9250, inclusive, Code of 1924 [formerly 1878, 1879, and 1880, of 1897 Code], an impairment of the capital of a bank shall be made good. The action of the banking department of the state in these particulars is for the purpose of enabling the bank to continue banking operations."

Therefore, we decide that the assessment under Section 1882, supra, was legal, notwithstanding the fact that there had been a previous one under Section 1878, supra.

IV. Nevertheless, appellant insists that, in any event, the assessment in litigation is not allowable against him for the purpose of paying the receiver's certificates. His theory at this  juncture is that the holder of these documents was not a creditor of the bank during the days of its operation, as contemplated by Section 1882 of the 1897 Code, before quoted. Elaborating upon his idea, he further suggests that the owners of these certificates are not the corporation's creditors, but rather, those of the receiver. Consideration at this point must be given to certain material facts. A review of the transaction will enlighten here.

At and before the time the receiver was appointed, the bank owed a considerable sum of money, and, in order to expeditiously liquidate the business, it was suggested by the superintendent of banking, the attorney-general, and the presiding judge, as before related, that receiver's certificates be issued, to borrow money for the payment of debts. Accordingly, the receiver executed nine certificates, aggregating in par value $17,500, and borrowed that amount of money thereon from the present holders thereof.

These certificate holders were not intermeddlers. They had heard the directions of the superintendent of banking, the attorney-general, and the trial judge. Good faith in the purchase of the certificates is strengthened by this incident. No claim is made that the proceeds of the certificate sale were not all used for the payment of proper corporation debts; and the present assessment will be required in the amount of 100 per cent to repay the money thus borrowed by the receiver; and so it would have been, had there been no receiver's certificates. The liability of appellant is in no way increased by the transaction. If the receiver's certificates had not been sold in the manner and way before explained, appellant would have had to pay his assessment in order that the receiver might, in turn, liquidate the original indebtedness. It is true that the certificates bear interest, but that is not made an issue by the pleadings in this controversy. Nowhere is there indicated a reason why appellant should benefit and profit through any loss falling upon these certificate holders.

For the purposes of the assessment, equity, therefore, will consider as still existing the debts of the corporation paid by these certificate proceeds. In other words, the certificate holders will be subrogated to the former creditors' rights in those debts. "Subrogation" in equity is broad and expansive. *Heuser v. Sharman*, 89 Iowa 355; *Kent v. Bailey*, 181 Iowa 489; *Wilkins, Neely & Jones v. Gibson*, 113 Ga. 31. *Heuser v. Sharman*, supra, aptly declares:

"It has been held that the right of subrogation is not founded on contract, but is the creation of equity, and enforced solely for the protection of persons who, by paying the debts of others, should in good conscience be substituted in the place of the original creditor."

Likewise, there is appropriate phraseology in *Kent v. Bailey*, supra:

"Conventional subrogation arises by virtue of an agreement, express or implied, that a third person, or one having no previous interest in the matter involved, shall, upon discharging an obligation or paying a debt, be substituted in the place of the creditor in respect to such rights, remedies, or securities as he may have against the debtor. * * * The books agree that

subrogation is not founded on contract or privity or strict suretyship, but is born of equity, and results from the natural justice of placing the burden where it ought to rest. The remedy depends upon the principles of justice, equity, and benevolence to be applied to the facts of the particular case. It is of equitable origin, adopted to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.''

Resultantly, the certificate indebtedness does not exist in such an independent way that it cannot be said in equity that the obligation was that owed by the bank, within the purview of Code of 1897, Section 1882, supra.

V. Argument to sustain a reversal is also predicated upon the ground that this statutory liability is not an asset of the corporation, and therefore unavailable to pay the certificates, because, according to the stipulation contained in each, the indebtedness evidenced thereby is protected through ''a lien upon the entire assets in the hands of the receiver.''

This phase of the dispute has been practically disposed of by the discussion relating to subrogation. Conceding, as we must, that the superadded stockholders' liability is a source from which the receiver may pay the indebtedness of the corporation, within the contemplation of Section 1882 of the 1897 Code, then, under the theory of subrogation, it may, in a similar way, be appropriated to pay the holders of these certificates ''Lien,'' as used in the contract involved, is not to be understood in the nature of a mortgage, but rather, as a mere equitable pledging of the assets in the receiver's hands which are available to pay corporate liabilities.

Undoubtedly, this statutory stockholders' liability is not an asset of the bank in the sense that the officers or managing board thereof can handle or in any way use or appropriate it. Yet the assessment arising out of such responsibility is a ''source'' available to the receiver for the payment of corporation debts. Necessarily, therefore, it constitutes and is an asset in his hands, within the meaning of the certificate.

VI. Furthermore, appellant urges that the foregoing discussion is immaterial because the certificates were not properly authorized.

Relating to this phase of the subject-matter, the following

facts and circumstances are important. There was no judicial order authorizing these evidences of indebtedness  at the time of their issuance. Subsequently, a validation thereof was made by the court, upon notice to the superintendent of banking, the attorney-general, and others. ''Notice'' in that proceeding, however, was not given to appellant.

The only effect of the validating judgment, therefore, so far as appellant is concerned, was to place the certificates in the same situation in which they would have been, had the receiver procured an original order authorizing their execution and delivery without notice, in the first instance. Thus, whatever validity the certificates would have had when issued upon a previous order therefor without notice, they would equally have under the validation. 34 Cyc. 301 and 302. Upon the institution of the present suit to collect the assessment, appellant became a party for all purposes relating to the legality of the receiver's certificates. Although not having received notice for the original authorization or subsequent validation thereof, he was, nevertheless, permitted to be heard in this action on the question of such certificate's necessity, validity, effect, and amount. All these issues could be tried in the present proceedings. Regarding this, there is the succeeding apt text in 34 Cyc., commencing on page 301:

''The general rule is that such certificates cannot be issued so as to affect the rights of interested parties except upon notice to them, or an opportunity to be heard, unless they consent. It is not necessary, however, that formal notice should be shown *if it appears that its equivalent has been enjoyed by the contesting parties* [the italics are ours] ; and although parties in interest not before the court cannot be concluded by the order, if they are subsequently brought in, or have an opportunity to be heard, they become entitled to contest the necessity, validity, effect, and amount of the certificates as if the questions were then for the first time presented, *and the court will then enforce the priority of the certificates or protect the prior liens according as the original order appears to be proper or otherwise.*'' (The italics are ours.)

Likewise, in the case at bar, appellant being a party to

the final proceeding to assess, he had the opportunity to raise any question desired concerning the certificates' "necessity, validity, effect, and amount," and he is now bound by the adjudication relating to any or all of the said elements.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.