**RECONSTRUCTION FINANCE CORPORA- TION v. BRADY, State Banking Com- missioner, et al.**

No. 4053.

Court of Civil Appeals of Texas. El Paso. March 27, 1941.

Rehearing Denied April 17, 1941.

358

Louis E. Marshall and Birkhead, Beckmann, Stanard & Vance, all of San Antonio, for appellant.

Gerald C. Mann, Atty. Gen., and George W. Barcus, Ocie Speer, Joe T. Goodwin, Wm. J. Fanning, and Lloyd Armstrong, Asst. Attys. Gen., for appellees.

SUTTON, Justice.

This is a suit by the Reconstruction Finance Corporation, as plaintiff, against F. C. Branson as Banking Commissioner of Texas; F. C. Branson, Banking Commissioner, Gerald C. Mann, Attorney General of Texas, and Charlie Lockhart, Treasurer of the State of Texas, composing the Banking Board of Texas; and against the State Banking Board, the Commonwealth Bank & Trust Company, of San Antonio, Texas, a defunct banking corporation under the

laws of Texas; and against F. C. Branson, Banking Commissioner, as receiver and liquidating agent of said bank.

The parties will be here designated as they were in the trial court.

Plaintiff's suit is to recover a balance of $15,000 due it on a note executed by F. C. Branson, Banking Commissioner of Texas, as statutory receiver of Commonwealth Bank & Trust Company of San Antonio, Texas, in the principal sum of $876,200, dated the 19th day of March, 1935, and due on or before July 24, 1935, and to subject to the payment of its debt and claim the sum of $12,429.43 on deposit in the Farmers & Merchants State Bank of Temple, Texas, where the said sum was deposited by the Commissioner under the direction of the Banking Board under the provisions of Art. 465, R.C.S.1925. There is no controversy between the parties on the facts.

The case was tried before the court without a jury and judgment rendered for the defendants and that the plaintiff take nothing. From the judgment the plaintiff has perfected this appeal.

The bank, by order of its directors, closed July 2, 1934, and the Banking Commissioner took it in charge immediately. The first notice to depositors and creditors was published July 26, 1934, and continued through October 26, 1934, under the provisions of Art. 456, R.C.S.1925. The bank was, on the date it closed, indebted to the plaintiff for money borrowed from it in the sum of $250,000. The plaintiff, by a resolution dated November 24, 1934, and an amendatory resolution dated February 21, 1935, authorized a loan to the Commissioner, as statutory receiver for the bank, in the sum of $876,200. The Commissioner, in his official capacity aforesaid, was, by a proper order of the District Court of Bexar County, authorized to make the application for the loan, execute the necessary obligation and to do all things necessary and required in connection therewith.

On the 23rd day of March, 1935, the Commissioner declared a 100 per cent dividend in favor of all creditors whose names appeared on the bank's books, regardless of whether they had filed claims or not in response to the notice published under the provisions of Art. 456.

There is no controversy about the prior and subsequent preliminary matters, nor any of the necessary steps to be had prior to the filing of this suit. The issue to be determined is whether or not the plaintiff is entitled to subject the fund on deposit as above mentioned to the payment of its debt, under the facts and circumstances in the case.

The principal sum set out above is made up of these items: $2,694.04, deposited with the bank in the due course of its business to secure the return of keys for safety deposit boxes; for such boxes; savings bank equipment, such as small savings banks, etc., which sums were deposited by persons now unknown; (2) $14.65 representing two checks issued by the Commissioner while in charge of said bank and never presented for payment; (3) a sum designated as dividends in various sums belonging to a list of depositors who failed, in response to the notice given by the Commissioner, to present their claims, in the total sum of $9,327.69, and who have never yet presented their claims; and (4) $393.05 representing dividends belonging to a small number of depositors who filed their claims but have never returned and claimed the money.

The plaintiff presents twenty-two assignments of error and twenty-one propositions. The defendants have eight counter-propositions in reply to those of the plaintiff, but no cross-assignments.

The solution of the question presented here depends upon the construction of the several provisions of the Texas Banking Laws applicable, and the contract made between the Banking Commissioner, as statutory receiver for the bank, and the plaintiff. The plaintiff seeks to subject the fund in the sum of $12,429.43 held by the Commissioner on deposit as aforesaid to the payment of its debt as against the other several classes of creditors who had failed for some six years prior to the trial of this case to come and assert their claims to their pro rata part of the fund and asserted to be, therefore, barred by the 90-day, six-months, two and four years statutes of limitation as against it; that the fund advanced and loaned by it was for the specific purpose of paying a 100 per cent dividend to all creditors of the bank, and those named having failed to claim and demand their respective shares are likewise barred and it is entitled to the return of such sum as a balance unused and held for it. The defendants take the position, and the trial court so held and concluded in his conclusions of law, the fund is a pure trust for the benefit of those four classes of creditors named, and that plaintiff is in no event entitled to any part of it.

■ We have reached the conclusion the trial court's judgment is erroneous for several reasons. By express provision of the statutes, Art. 457, it is provided that those creditors who do not present their claims within the 90-day period provided in the preceding article, 456, shall only participate to the extent of the assets remaining in the hands of the Commissioner equitably applicable thereto, meaning thereby that such claimants could not share to the extent of prior dividends declared, but in dividends declared after the filing of their claims only. It has been so held. Brand v. Current, Tex. Civ.App., 91 S.W.2d 445. Art. 463 provides that after the expiration of the 90-day period fixed for the presentation of claims (Art. 456) the Commissioner may declare one or more dividends, and after the expiration of one year from the date of the first notice to creditors is published he may declare a final dividend under direction of the District Court.

■■ We think it plain under the foregoing provisions of the statutes, the Commissioner may declare dividends only in favor of those depositors and creditors who have filed claims and that he is unauthorized to declare a dividend in favor of an unknown and non-claiming creditor. The fund in the sum of $12,021.73, being the sum of $2,694.04 set aside for those who had made deposits for savings bank equipment, and $9,327.69 set aside for those creditors who had filed no claims, is a pure asset of the bank. To this extent the Commissioner has gone into the assets of the bank and set up an unauthorized trust. The fact that he has denominated it a dividend in favor of those two classes of creditors and undertaken to deposit it under the provisions of Art. 465, makes no difference. Its character remains unchanged. The same constitutes a breach of the trust. This fund should have never been deposited by the Commissioner but promptly applied to the payment of plaintiff's claim. As said by eminent counsel, who appears here for the defendants, in his argument in Brand v. Current, supra, a claim that has not been presented is neither "suable" nor payable, citing Brand v. Conner & McRae, Tex.Civ. App., 78 S.W.2d 712.

On other grounds the trial court may be ruled in error.

■ It cannot be said the plaintiff is not a creditor of the bank. The Legislature knew as a practical proposition that insolvent banks rarely ever pay a 100 per cent dividend, and evidently had that fact in mind when it enacted Art. 465. We do not think that article susceptible of the construction placed upon it by the defendants and the trial court; that is, that it applies only to those four classes of creditors named and not to the plaintiff. The statute does not say so. Had the Legislature intended to limit it to any such class, or any other particular class, it could have easily done so, but it did not. The language used is general and inclusive. We quote it:

"Dividends and unclaimed deposits remaining in the hands of the Commissioner for six months after the order for final distribution shall be by him deposited in some State bank to be designated by the Banking Board, to the credit of the Commissioner in his official name, in trust for THE BONA FIDE DEPOSITORS AND CREDITORS of the liquidated bank." (Capitals are ours.)

It is a matter of common knowledge known to the Legislature that in every bank there are unclaimed and lost deposits and that there are always those who do not claim dividends and deposits as in the case of this insolvent bank. We think the Legislature intended, and we construe the article to mean, that dividends and unclaimed deposits remaining in the hands of the Commissioner six months after the final order of distribution shall be deposited and held in trust subject to the claim of any bona fide depositor and creditor whose claim remains unsatisfied in whole or in part. The depositors and creditors of any insolvent bank paying less than 100 per cent are entitled to have their claims ratably satisfied out of such funds remaining in hand and are not required to take the chance of having it pass into the hands of the State after a lapse of years, or to some other, who has no just claim against it. Such a creditor may bring a class suit, or bring in all the known claiming creditors and have such fund equitably distributed, or the Commissioner may cause the same to be done. This is further made clear by Art. 467. This article provides the Commissioner shall pay over the moneys so held by him to those respectively entitled thereto upon the order of the Banking Board, upon being furnished satisfactory evidence of their right to the same. In case of doubt or conflicting claims the Banking Board may require an order of the District Court authorizing and directing the payment thereof. If the fund is one applicable to the claims of those classes named only, when could there be

any doubt or conflicting claims? There might be some doubt as to identity, but how could there be conflicting claims, unless between a diligent and a belated claimant, or garnisheeing or attaching creditors, whom the legislators could have hardly had in mind. The negligent, non-claiming claimants cannot complain, because they are cut off by limitation as between themselves and the diligent claimant. These several statutes are statutes of limitation. This conclusion is supported by McNutt v. Cox, 133 Tex. 409, 129 S.W.2d 626, 122 A.L.R. 941; Brand v. Hood, Tex.Civ.App., 85 S.W.2d 347; Shaw v. Bush, Tex.Civ.App., 61 S.W.2d 526, writ refused; State Banking Board v. Pilcher, Tex.Com.App., 270 S.W. 1004; Chapman v. Tyler County, Tex.Civ. App., 259 S.W. 301, writ refused Tyler County v. Chapman, 115 Tex. 582, 278 S.W. 1115; and Chapman v. Mooney, Tex.Civ. App., 257 S.W. 1106. We forego any quotations from the authorities.

We are not unaware of the case of Federal Trust Co. v. Brand, Tex.Civ.App., 76 S.W.2d 142, which has been given much attention by the defendants. Chief Justice Hall was dealing with a case entirely different from the one here under consideration. Of course, the stockholders, as such, of an insolvent bank are not creditors of the bank within the meaning of Art. 465 and cannot participate in such fund. We do not think the opinion in conflict with the rules laid down in the cases cited above, but if it is, we are, nevertheless, of the opinion the former are sound and the latter must yield to them.

Under the provisions of Art. 5947, Sec. 186, R.C.S., the holder of a check is required to present it for payment within a reasonable time, and that the drawer will be discharged to the extent of the loss occasioned by the delay. It cannot be said these two checks, making up the $14.85 item, if presented have been within a reasonable time. Of course, the sum of $393.05 represents pure dividends, and under the foregoing construction of Art. 465 may be subjected to the claim of the plaintiff. A failure to do so would result, contrary, we think, to the intention of the Legislature, in hoarding up a sum of money for an indefinite time for the mere chance of a claimant coming and asserting his claim, and if he fails then ultimately deliver it to one having no right to it.

We now come to a consideration of the equitable aspect of this case. The plaintiff herein was created by the Congress of the United States to meet the terrible financial distress of the times. It was especially authorized to make loans to institutions distressed as the defendant bank in this case, and to relieve depositors and creditors who had funds tied up and imperiled. The Texas Legislature amended the banking laws to enable State banks and the Commissioner of Banking to take a fuller advantage of the loans offered by the plaintiff herein, which were not permissible under the then existing laws. The plaintiff was not created for purposes of profit, nor to make indiscriminate commercial loans to institutions or persons to enable them to make profits. It required that the application state specifically the purpose for which the loan was sought. The Commissioner's application was made for the sole purpose of making "an advance distribution of 100 percent on the lawful claims against the bank." The distribution of the funds was limited to this purpose.

It is conceded that the assets of this insolvent bank were insufficient to pay the depositors and creditors 100 per cent. It is likewise admitted, and the trial court so found, that the plaintiff, on August 29, 1938, bid and paid a sum in excess of the reasonable value of the assets then in hand. The sum bid, $472,034.39, was the balance due the plaintiff on its note and debt, plus $15,000. The order of the District Court authorizing and approving the sale provided that same was without prejudice to the plaintiff's right to assert its claim to the sum of $12,429.43 on deposit, and the Commissioner's right to deny plaintiff's asserted right to subject the fund to the payment of its debt.

We cannot agree that it was contemplated any part of the funds loaned and furnished by plaintiff for the one specific and limited purpose could be deposited as these funds have been and a mere chance taken that unknown and non-claiming claimants might at some time in the future appear and claim their money; that the same could or would be held indefinitely and ultimately, the claimants still failing, permitted to go to the State or to some other who has no just claim to it, and placed beyond the reach of the plaintiff. We think a court of equity has the power and authority and should decree the fund a trust for the benefit of this plaintiff.

The defendants say the fund of $2,694.04 deposited to secure the return

of keys, savings equipment, etc., is a mere pledge and the money was never that of the bank. Had this property been lost and never returned the money would have certainly become that of the bank. It has never been returned. It is also agreed and found by the court that these claimants are unknown and that all this savings property and equipment and all physical property of the bank have long since been disposed of. We think property of this kind, if not returned within a reasonable time, may be presumed to be abandoned. A reasonable time, we think, is the period of limitation applicable. If the property were returned and tendered to the Commissioner it could be of no value and he would be fully justified in the exercise of his discretion under the provisions of Art. 456 in declining it and refusing the claim, and making it available to other creditors. Had the funds not been advanced by this plaintiff to pay those claimants who appeared promptly and made their claims 100 per cent, could it be said these funds would not have been available to them? We think not. We take it from the record in this case that these funds were not kept segregated as such, but went into the cash drawers of the bank and were merely credited to that fund and no record of names kept. In other words, the fund was not kept separate and apart from other funds in the bank and for the benefit of these depositors. If this be true, then these people were simple creditors of the bank.

■ We agree with counsel for the defendants that Art. 456 is not an absolute bar when there are funds in the Commissioner's hands to pay delayed claims. Of course, it is nothing less than simple honesty for the Commissioner to pay a delayed claimant when he appears and offers a good excuse for not sooner filing his claim and it appears he is a bona fide depositor or creditor. The State does not and should not want something that belongs to another. When a diligent claimant has timely made a claim, as this plaintiff has, it cannot be said there are assets equitably applicable to the claim of one guilty of a long delay, greatly in excess of any applicable statute of limitation, in presenting his claim, such as we have here. For the same precise rule of simple honesty, this fund should be subjected to the plaintiff's debt. As heretofore observed, as between the diligent and the long belated claimant, the statutes of limitation are applicable. And again, the plaintiff here, having supplied the money necessary to pay these four classes of creditors who have failed to appear and make their respective claims within the several time limitations prescribed by law, is entitled as against all others to be subrogated to the positions of such creditors.

■ It is the policy of the law to expedite the liquidation of the affairs of an insolvent institution such as the bank in this instance, and to settle all claims with the least delay possible. This we take to be the primary purpose of the several provisions of the statutes. We regard it as a reason in the minds of the legislators for making this fund available to any bona fide depositor and creditor. It was certainly not the intention of the Legislature to have funds laid up indefinitely waiting on claimants to appear whom may never come. It must be apparent from the record in this case that these creditors and depositors have abandoned their claims. As against them the diligent are entitled to be recognized. To permit this fund to be held and then diverted, as we are forced to conclude it must ultimately be, to some purpose other than as originally intended, could do nothing else than reflect upon the integrity of this great State and calculated to impair its credit.

■ We cannot agree with the contention of plaintiff that its claim is a debt due the United States and as such is entitled to priority and preference. The plaintiff is a federal corporation and an agency of the United States Government, but it cannot be said to be the United States within the provisions of §§ 191 and 192, 12 U.S.C.A.

We have concluded for the reasons stated that the trial court was in error in his conclusions and in the rendition of the judgment against the plaintiff, and that the judgment should be reversed and here rendered for the plaintiff, and it is so ordered.

Reversed and rendered.

### On Rehearing.

We have given careful consideration to appellees' motion for a rehearing and still adhere to the views expressed in the original opinion.

In support of the views therein expressed that plaintiff is a creditor, and by

virtue of the use to which the money received from it was applied, is entitled to be subrogated to the rights of the depositors and creditors proving their claims, we cite the following authorities: Andrew, State Superintendent of Banking, v. Bevington State Bank, 206 Iowa 869, 221 N.W. 668; Chase v. Hall, 9 Cir., 30 F.2d 195; Hays v. Wilkinson, 10 Cir., 72 F.2d 201; Smith v. Reconstruction Finance Corp'n, 5 Cir., 103 F.2d 833.

The motion is overruled.