## McADAMS v. RECONSTRUCTION FINANCE CORPORATION.

### No. 4673.

Court of Civil Appeals of Texas. El Paso.
Nov. 30, 1949.

Rehearing Denied Dec. 21, 1949.

666

Company of Corpus Christi, Texas; the Attorney General, the State Treasurer, as composing the State Banking Board, and the State Banking Board, seeking to subject its claims to certain funds held on deposit in the State Bank by the State Banking Commissioner. Judgment was in favor of R.F.C. against the State Banking Commissioner for funds held by him in the State bank, allegedly in trust for non-claiming depositors and creditors of said State Bank. The judgment was in favor of R.F.C. in the sum of $3,587.84. All of said named defendants gave notice of appeal and perfected this appeal.

The facts in the case are practically undisputed, and were stipulated between the parties. It was agreed that the R.F.C. is a corporation organized and existing under the laws of the United States; that The Texas State Bank & Trust Company of Corpus Christi, Texas, was at all times pertinent a banking corporation organized and existing under the laws of the State of Texas with its principal office and place of business in Nueces County; that on April 9, 1937, said bank being insolvent was closed by Z. Gossett as the Banking Commissioner of Texas and placed in the hands of said Banking Commissioner for liquidation; that said bank has since been and now is in the hands of the Banking Commissioner for such purpose; that on April 9, 1937, the Banking Commissioner took charge of said bank and its affairs and proceeded to liquidate same through and under the jurisdiction of the District Court of Nueces County; that on the date of closing said bank was indebted to R.F.C. in the sum of $100,000 together with interest in the sum of $632.88; the consideration for the debt was and is money loaned by the R.F.C. to said bank, which debt is evidenced by one certain Income Debenture bearing date January 5, 1934 in the principal sum of $100,000 executed and delivered by the said bank to R.F.C., maturing on August 1, 1953, bearing interest at the rate of 5% per annum, payable semi-annually at the office of said bank on February 1 and August 1 of each year; that the Banking Commissioner upon taking charge of said bank

Price Daniel, Attorney General, David Wuntch, Asst. Attorney General, Ocie Speer, Austin, for appellant.

Birkhead, Beckmann, Stanard, Vance & Wood, San Antonio, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Nueces County, 117th Judicial District. The Reconstruction Finance Corporation, hereinafter referred to as "Appellee" sued Jno. Q. McAdams as Banking Commissioner and as statutory receiver of The Texas State Bank & Trust

published notice to depositors and creditors of said bank in accordance with Art. 456 of the Revised Civil Statutes of 1925; that said notices were first published on May 22, 1937; that on May 22, 1941 the Commissioner, in accordance with the provisions of said Article mailed a similar notice to all persons whose names appeared as creditors on the books of said bank who had not theretofore presented said claims; that at the time of the closing of said bank it was indebted to divers persons including the indebtedness to R.F.C. In due course R.F.C. presented and filed its proof of claim on the indebtedness in the sum of $100,632.88 as the amount due and owing on April 9, 1937; said claim was duly approved and allowed by the then Banking Commissioner on June 24, 1937, in accordance with the following endorsement placed thereon by the Commissioner: "Approved as an unsecured common creditor's claim and to participate in funds of The Texas State Bank & Trust Company, Corpus Christi, Texas, in Liq., after all depositors and other creditors (other than holders of Debentures) including claim of Federal Deposit Insurance Corporation, representing the amount paid to depositors have been fully paid."

On or about May 20, 1941, sufficient cash was derived from the liquidation of said bank to declare dividends aggregating 100% of all claims of all depositors and creditors of said bank which came to the knowledge of the Commissioner, and a 100% dividend was paid to all creditors and depositors who had filed their claims with him as provided by law, save and except the claim of R.F.C. and the following claims then pending in court against the bank. These claims were claims asserted by J. E. Garrett against the bank in cause 19,282-B, styled Garrett v. Gossett, Banking Commissioner; claim asserted by Garrett pending in said court in cause No. 19,293-B styled Garrett v. Gossett, Banking Commissioner; claim of Sam B. McKenzie pending in court under No. 19,290-B, styled McKenzie v. Banking Commissioner; claim of C. B. Warr pending in court styled Warr v. Banking Commissioner; and the Banking Commissioner

paid all of said depositors and creditors who had filed their claim the full amount due them other than the said R.F.C. and the said claims of Garrett, McKenzie and Warr. On May 31, 1941, the Bank was indebted to divers general depositors who had failed to present their claims as required by law, and that the amount of indebtedness due such non-claiming depositors aggregated $4,101.29.

On May 31, 1941, there was owing upon the indebtedness due the said R.F.C. $121,465.69, including interest to May 20, 1941 on said debt. The Banking Commissioner, acting pursuant to an order of the court sold all of the remaining assets other than cash, to R.F.C., for the sum of $11,000, which said assets other than cash were not of a value exceeding $11,000, and as a part of the consideration for such sale the said R.F.C. assumed any and all liabilities of said Texas State Bank & Trust Company and/or Banking Commissioner, and assumed all liabilities upon the claim of Garrett and the claim of McKenzie, and the court in said order allowed the Commissioner to withhold among other funds provided for in said order the sum of $4,101.29 as unclaimed deposits. The Commissioner paid all the rest and remainder with the cash belonging to said bank, in the amount of $40,379.72, to the said R.F.C. as a credit on its debt. Under the terms of the court order of May 31, 1941, it was expressly agreed and stipulated therein that the sale of said assets and the withholding by the Commissioner of the sum of $4,101.29, pursuant to his contention that the fund should be held by him as unclaimed deposits under Art. 465, R. C.S. should be held, however, without prejudice to the right of the said R.F.C. to claim the same or the right of the Commissioner to deny such funds so withheld were legally liable to the claim of the R.F.C. It was further ordered and provided in the judgment of May 31 that should the R.F.C. establish as a matter of right that it was entitled to priority of payment over the non-claiming depositors and creditors in the sum of $4,101.29 held by the Commissioner as unclaimed deposits, then the Banking Commissioner would be

directed and authorized by the court to pay the same to R.F.C. upon the further order of the court, or so much thereof as the R.F.C. should establish as a matter of law that it was entitled to; further, that the R.F.C. is a creditor of said bank, there is due and owing on its claim after allowing all credits and payments thereon the principal of $67,056.18, with interest thereon from May 31, 1941 at the rate of 5% until paid; that the claims of McKenzie and Warr have been compromised, settled and finally disposed of, and said suits dismissed and the other suits pending against the Banking Commissioner mentioned have been compromised and the suits dismissed. On September 2, 1942, R.F.C. made a formal demand on the Banking Commissioner to said unclaimed deposit fund held by the Commissioner, and demanded that the balance on hand in such fund should be subjected to the payment of the unpaid balance of the claim and debt of R.F.C. The Commissioner promptly declined the claim. Since May 22, 1941, twenty-seven depositors have filed their claims with the Commissioner of Banking, and the unclaimed deposits now held by the Commissioner is the sum of $3,587.84.

Plaintiff's original petition was filed December 9, 1942. No report of the final closing of the liquidation of said bank has been made and no orders of the court thereon have been entered. R.F.C. did not contest the payment of the twenty-seven depositors who filed claims after May 22, 1941, and seeks only to subject the sum of $3,587.84 to its claim.

The court on demand of appellants made up and filed findings of fact and conclusions of law. Those deemed material are in substance as follows: On April 9, 1937, said bank was insolvent and placed in the hands of the Banking Commissioner for liquidation, and said bank has since been and now is in the hands of said Banking Commissioner for such purpose. The Banking Commissioner liquidated same through and under the jurisdiction of the District Court of Nueces County. He on taking charge published notice in a newspaper calling on all persons who may have claims against said bank to present the same to the Banking Commissioner and make proof thereon within ninety days after the date of the first insertion of such notice, and the Commissioner mailed the notice in the United States mails in a stamped envelope, with his return address, to all persons whose names appeared as creditors upon the books of the Bank, and in full compliance with the provisions of Art. 456 of the Revised Statutes of Texas, 1925, and the notice was first published in a newspaper on May 12, 1937. The facts as agreed to by the parties found by the Judge it is thought unnecessary to reproduce. The Judge found the indebtedness of the Bank, found that at the time of closing said Bank it was indebted to divers persons, including the indebtedness to R.F.C.; that the R.F.C. presented and filed its proof of claim on the indebtedness aforesaid and said claim was duly approved and allowed by the Banking Commissioner. The approval was as quoted on page 2 hereof. On or about May 20, 1941, sufficient cash was derived from the liquidation of said bank to declare dividend aggregating 100% of all claims of depositors and creditors of said Bank which came to the knowledge of the Commissioner, and a 100% dividend was paid to all creditors and depositors who had presented their claims with him as provided by law, save and except the claim of R.F.C.; that on May 22, 1941, the bank was indebted to divers general depositors who had failed to present their claims as required by law and that the amount of indebtedness due such non-claiming depositors aggregated $4,101.29; that non-claiming depositors and creditors of the bank who failed to present their claims to the Banking Commissioner consist of 694 persons; that the Commissioner of Banking mailed written notices to each of said persons whose names appeared as creditors on the books of the bank at their last known address as appeared on the books of the bank, as required by Art. 456, R.C.S., and of the 694 notices sent out to said creditors 506 notices were returned to the said Commissioner as unclaimed; that since May 22, 1941 twenty-seven depositors have filed their claims with the Commissioner of Banking and the un-

claimed amount remaining with the Banking Commissioner is the sum of $3,587.84; that there is due and owing on the claim of R.F.C. after allowing all credits and payments thereon $67,056.18 and interest thereon from May 31, 1941 at the rate of 5% until paid. That no report of the final closing of the liquidation of said bank has been made and no orders of the court thereon have been entered. The Banking Commissioner, acting in pursuance of Art. 465, R.C.S. and for the purpose of creating a trust fund for the benefit of the above mentioned non-claiming depositors and creditors has deposited the sum of $3,587.84 with a State Bank selected by the State Banking Board of Texas, which sum is now held in trust in pursuance to Art. 465, R.C.S. Previous to the filing of this suit R.F.C. made a formal demand in writing to the Banking Commissioner of its claim, and demanded that the balance on hand in such fund should be subjected to the payment of the unpaid balance of the claim of R.F.C. against said Bank. The Banking Commissioner refused said demand. The court found as conclusions of law in substance the Commissioner had unlawfully gone into the assets of the bank and set up an unauthorized trust fund under Art. 465 for non-claiming negligent claimants who had failed to file their claims and have same approved by the Commissioner as required by Art. 456–457 and 463, to the prejudice and damage of the diligent plaintiff claimant R.F.C.; further the claim of non-claiming depositors and creditors not having been presented to the Banking Commissioner is neither suable nor payable and the Commissioner has gone into the assets of the bank and set up an unauthorized trust fund for said non-claiming depositors, contrary to the terms of Art. 465 and to the prejudice and damage of the diligent claimant R.F.C.; that the Reconstruction Finance Corporation, in exercising diligence timely presented its claim to the Commissioner for allowance and approval, and is entitled to plead the Statute of Limitations of 90 days under Art. 456 against the defendant in that the non-claiming depositors and creditors failed to make demand for their money and file their claims with the Banking Commissioner within 90 days after the Banking Commissioner gave the statutory notice to creditors of the insolvent bank; on May 22, 1937 and May 22, 1941; the R.F.C. is entitled to plead the statute of limitations of two years against the Commissioner, likewise is entitled to plead the four year statute of limitations; further, that in equity under the doctrine of stale demands, laches and abandonment, the fund is not to be held forever for the benefit of the non-claiming creditors and depositors who have neglected and failed to timely present and file their claims in accordance with the statutes and notices given by the Banking Commissioner.

The money advanced by the R.F.C. is a claim against the estate of the insolvent bank. The R.F.C. is a creditor of the insolvent bank. Reconstruction Finance Corporation v. Gossett, Banking Com'r, et al., 130 Tex. 535, 111 S.W.2d 1066. In this case is set out the debenture which is substantially a debenture of the same nature as the one relied on here by said R.F.C. It is a claim which is classified in accordance with the classification made by the Banking Commissioner which we have heretofore copied herein. The money held on deposit by the Banking Commissioner for the non-claiming depositors must have been derived from the assets of the bank. All claiming creditors and depositors have been paid save and except the R.F.C. The question here posed is whether the Commissioner of Banking should apply the fund held for the non-claiming depositors to the partial liquidation of the claim of R.F.C., or hold same in trust for such non-claiming depositors.

In the case of Reconstruction Finance Corporation v. Brady, Tex.Civ.App., 150 S.W.2d 357, Wr. Ref., we held that funds deposited with the bank to secure the return of keys for safety deposit boxes, a sum representing unclaimed deposits were assets of the bank and subject to the liquidation of the claim of the R.F.C. superior to the claims of depositors failing to prove their claims in accordance with Art. 456 and 457, R.C.S., in failing to prove same within two and four years of the date of the

notice. In this case the claim of R.F.C. was founded on a loan to the Commissioner as Receiver for the bank in the sum of $876,200. The proceeds of this loan were used to liquidate the claims of depositors and creditors who had proved their claims. The portion thereof applicable to the claims of the non-claiming depositors was over the protest of the Commissioner awarded to the R.F.C.

The only ground of distinction between the above case and the case at bar urged by the appealing defendants is that the R.F.C. claim here is founded on a debenture of the class and character mentioned in Reconstruction Finance Corporation v. Gossett, supra. That case is authority for the proposition that the R.F.C. here is a creditor of the bank, as a creditor of the bank entitled to payment out of the assets of the bank in the hands of the Receiver, to which under the law a depositor or other creditor has not a prior right. In R.F.C. v. Brady, supra, the non-claiming depositors, if they had complied with the law for presentation of their claims would have had a right superior to the R.F.C. It is implicit in the decision and reasoning of the case that by failure to claim the funds applicable to their claim as depositors they lost their priority. Here also we think that by failure to assert their claims the non-claiming depositors abandoned their claim to priority, and by abandonment lost their claim to such priority.

The liquidation of the assets of an insolvent bank is a statutory trust—a statutory trust of which the Commissioner of Banking is the Trustee. It is, we think, a trust of expedition. It can not be the policy of our Legislature that funds fairly and equitably subject to the liquidation of claims of creditors of the insolvent bank should be tied up for great periods of time, to the end that same may be escheated to the State. The requiring of the presentation of claims within 90 days after the notice provided for in Art. 456 of the Revised Civil Statutes is intended to promote the speedy liquidation of the trust. The obligations due to the depositors were payable on demand. It is a fair inference, we think, from the lapse of time, that claims will never be presented for the deposits in question here; likewise a fair inference that the non-claiming depositors have abandoned all claim to their deposits, all claim to the preference given them by law. There is no error in the record, and the judgment of the trial court is in all things affirmed.